## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NELCIE LITTLE,                         :
  Plaintiff,                 :
                                   :
v.                                     :  CIVIL NO. 3:05CV00806 (AVC)
                                   :
NORTHEAST UTILITIES SERVICE            :
COMPANY,                               :
  Defendant.                   :


## RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for compensatory and punitive damages, as well as equitable relief arising out of the plaintiff, Nelcie Little's former employment with Northeast Utilities Service Company ("Northeast Utilities"). The second amended complaint alleges discriminatory treatment based upon race, which constituted a hostile work environment and led to a constructive discharge in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1]

The defendant has filed the within motion for summary judgment arguing that the plaintiff cannot establish as a matter of law that the conduct alleged was discriminatory and in violation of 42 U.S.C. § 1981.

The issues presented are: 1) whether there is a genuine issue of fact as to whether Northeast Utilities treated Little differently because of her race; 2) whether there is

---

[1] 42 U.S.C. § 1981 provides, in relevant part, that "all persons within the jurisdiction of the United States shall have the same right in ever State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

a genuine issue of fact as to whether Northeast Utilities constructively discharged Little; 3) whether there is a genuine issue of fact as to whether Northeast Utilities created a hostile work environment for Little; and 4) whether there is a genuine issue of fact as to whether Northeast Utilities retaliated against Little.

For the reasons set forth hereafter, the motion for summary judgment is GRANTED.

## FACTS

An examination of the complaint, pleadings, Local Rule 56 statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, discloses the following undisputed material facts.

Nelcie Little, the plaintiff, worked for Northeast Utilities, the defendant, for approximately fifteen years in various positions. Throughout her employment, Northeast Utilities used performance rating reviews as a method of grading employees on their performance. From 1986 to 1991, on a scale of 1 to 5, Little received mainly 3's on her annual reviews[2]. In 1993, when Northeast Utilities changed its grading system from number grades to letter grades,

---

[2] During this period, Northeast Utilities' rating system included a graded scale of 1 to 5, in which a grade of 1 indicated that the employee failed to meet expectations, and 5 indicated that the employee performed exceptionally.

Little continued to receive average performance rating reviews.  In that year, instead of a "3," Little received a "Q" .[3]  In 1994 and 1995, Little's performance ratings revealed that her average rating increased to a "Q+".  In 1996, however, her performance ratings dropped as Little again averaged a "Q" rating.  Little's 1997 and 1998 ratings disclose that she maintained her rating as an average employee.  However, in 1998, Little's performance review report also noted Little's weakness in communication and her tendency to separate herself from her coworkers during difficult situations.  In 1999 and 2000, Little's performance review reports again cited problems with her performance as she only "marginally met" Northeast Utilities' productivity standard for those years.

Deposition testimony reveals that in 2000, Northeast Utilities had additional concerns over Little's performance. In May of that year, Northeast Utilities reassigned Little to work under David Brown's supervision.  Northeast Utilities employee, Thomas Murphy, testified that "[Little] would become very defensive when David would give her corrective action."  For her part, Little has testified that

_____

[3] In changing from number grades to letter grades, Northeast Utilities' rating system now consisted of "E" for exceptional, "Q+" for quality plus, "Q" for quality, "NI" for needs improvement, and "U" for unacceptable.

her relationship with Brown was marred by his harassment of her, exemplified by his constant public criticism of her.

Murphy further testified, however, that he had to meet with Little to discuss her productivity because it required improvement. Murphy explained that Little "had a difficult time . . . understanding why [the supervisors] felt she wasn't productive despite looking at reports that showed she was below average in her productivity." Murphy also testified that, "[Little's] schedule adherence was relatively low" and "[her] availability was poor." In particular, Murphy recalled incidents in which Little transferred telephone calls to other departments when she possessed the capability of handling the telephone calls herself. In addition, when trying to coach or counsel Little, Murphy testified that Little became defensive and did not accept constructive criticism well.

In May, 2000, the same month that David Brown became Little's supervisor, Little filed a grievance with Northeast Utilities' "Beacon Light," a telephone number provided to employees to privately voice their concerns or complaints with the company. In her grievance, Little complained of discrimination and harassment based on race. Specifically, she asserted in her grievance "that [Little] applied for [supervisor] positions several times and had not been

selected," which she blamed on "prior difficulties with a [supervisor]."

Attorney Sarah Moore Fass conducted an investigation of Little's grievance. On June 19, 2000, Fass interviewed Little. During the interview, Little "affirmatively stated that she did not think that she was treated differently because of her age or race." A dismissal of Little's grievance followed the investigation.

In August, 2000, Little filed a formal complaint against Northeast Utilities for similar discriminatory reasons with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). On May 24, 2001, and again on October 18, 2001, Little amended this complaint to include a charge that Northeast Utilities retaliated against her for filing the grievances. After an investigator found no reasonable cause for the complaint on the merits, the CHRO dismissed Little's grievance and denied a later motion for reconsideration.

In 2001, after filing the complaint with the CHRO, Little received another performance review report. This report was her worst to date as she received an overall rating that only "marginally met" Northeast Utilities' standards. Further, the report noted that Little needed to improve her schedule adherence, her communication with

supervisors and coworkers, her attitude, and her attendance. Despite the problems cited on Little's performance reviews, Northeast Utilities never threatened Little with dismissal from her position at the company.

Little testified and alleges in her complaint that Northeast Utilities made this negative performance review as retaliation against her for filing the CHRO complaint and opposing discrimination in the workplace. Further, she testified that Northeast Utilities denied her promotions for this same reason. She explained that after filing the grievances "everything just changed." She further stated that "any little thing that [supervisors] could find to bring me in the office for, they were bringing me in."

Nevertheless, her Northeast Utilities supervisor, David Brown, stated that Little was only an average employee. As such, Brown testified that Northeast Utilities denied Little's applications for promotions because more qualified candidates received the positions. Additionally, during Little's own testimony, she explained that on a scale of 1 to 5, she considered a 4 or a 5 to be a good performance rating, and yet she acknowledged that she routinely received ratings of 3.

In his deposition, David Brown also recalled that at one point Little expressed to him that she felt "out of the

loop" among her coworkers.  The complaint also contains this allegation.  However, Northeast Utilities employee, Diane Brown, testified that it was Little that removed herself from her coworkers as she was "kind of moody."  Further, David Brown's testimony asserts that when he discussed this issue with Little and her former supervisor, Sandy Moreland, Little acknowledged that she sometimes removed herself from her coworkers.

Little also testified that she believed some of her coworkers suffered from harassment as well.  She refers to coworker, Maryanne Donovan, as an example.  Little explains Northeast Utilities employees harassed Donovan, a white woman, because of her smell and her hair.  Little later admitted that all of her coworkers that she identified as suffering from harassment, were white.

Little further testified in her deposition that on one occasion, a coworker using hairspray in the work area sprayed the hairspray "directly in [her] face, numbing the left side of [her] face."  The coworker received no reprimand after an inquiry into the matter revealed this incident was an accident.  Nevertheless, Northeast Utilities supervisor Diane Brown still directed employees to stop using hairspray in the office so as to prevent further incidents.

In her deposition, Little also testified that on one occasion, her former supervisor, Sandy Moreland, referred to a customer as a "black bitch" when speaking with Little.

Due to the stressors of her duties while employed by Northeast Utilities and the indifference Little claims Northeast Utilities showed toward her grievances, Little requested a leave of absence, which Northeast Utilities granted.

Upon her return, Little faced neither a loss in pay, nor a demotion. Instead, she returned to her regular position. However, Little felt as though the policies and procedures required by her job criteria changed. Although she attempted to receive training she missed during her leave, Little asserts that Northeast Utilities rebuffed her requests. Still, Little testified that she did not know whether formal training was even offered during her absence. Moreover, Northeast Utilities contends that it requires all employees to receive training: "everyone not only received the training, everyone had to receive the training, and we signed off on them." So, David Brown testified, if someone missed training due to illness or some other reason, Northeast Utilities provided special training sessions.

On June 22, 2001, due to depression and physical illness related to her work environment, Little left her job

permanently claiming constructive discharge.  On May 17,
2005, Little commenced this action alleging violations of 42
U.S.C. § 1981, as well as the Fifth and Fourteenth
Amendments.[4]  On November 10, 2005, the court granted the
defendant's motion to dismiss Little's causes of action
alleging violations of the Fifth and Fourteenth Amendments,
but denied the motion to dismiss with respect to Little's §
1981 claim.

## STANDARD

Summary judgment is appropriately granted when the
evidentiary record shows that there are no genuine issues of
material fact, and that the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c). In
determining whether the record presents genuine issues for
trial, the court must view all inferences and ambiguities in
a light most favorable to the non-moving party. See Bryant
v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  A plaintiff
raises a genuine issue of material fact if "the jury could
reasonably find for the plaintiff." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56(c) "provides
that the mere existence of some alleged factual dispute

_____

[4] Little requested a release to sue from the United States
Equal Employment Opportunity Commission ("EEOC") on January
31, 2002, and received the release to sue letter on February
7, 2002.

9

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is not a genuine issue of material fact." Id. at 247-48 (construing Fed. R. Civ. P. 56(c)).

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denial of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "The mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Zigmund v. Foster, 106 F.Supp.2d 352, 356 (D. Conn. 2000). Furthermore, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty, Inc., 477 U.S. 242, 248 (1986).

**DISCUSSION**

I. <u>Disparate Treatment</u>

Northeast Utilities first argues that Little cannot establish a prima facie case of race discrimination. Specifically, the defendant asserts that "while the plaintiff may have alleged certain unpleasant treatment she might have received while at work, she failed to show that this treatment was due to her being part of a racial minority." Northeast Utilities further argues that Little "failed to provide support for her argument that [it] discriminated against her concerning her right to engage in any of [§ 1981's] enumerated rights."

Little responds, arguing that "the record is uncontroverted that [she] can establish a prima facie case under a disparate treatment theory." Specifically, the plaintiff asserts that Northeast Utilities discriminated against her because of her race, and "the discrimination concerned one of the enumerated activities in § 1981" as "§ 1981 has long been held applicable to the employment context." Little specifically contends that she established "a prima facie case under § 1981 as she was clearly qualified for [a promotion]," and yet did not receive one due to her race.

The United States Code provides, in relevant part:

>All persons within the jurisdiction of the
>United States shall have the same right in
>every State and Territory to make and enforce
>contracts, to sue, be parties, give evidence,
>and to the full and equal benefit of all laws
>and proceedings for the security of persons
>and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a).  The Second Circuit has explained that "this section . . . outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment, . . . and is applicable to a plaintiff complaining of discrimination during an employment period." Patterson v. County of Oneida, 375 F.3d 206, 224-225 (2004).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court provided a burden-shifting analytic framework for determining when a 42 U.S.C. § 1981 cause of action exists. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989)(applying McDonnell Douglas analysis to cause of action based upon 42 U.S.C. § 1981).  To establish a claim under 42 U.S.C. § 1981, a plaintiff must first establish a prima facie case by alleging certain facts.  McDonnell Douglas Corp., 411 U.S. at 802.

It is "essential to an action under Section 1981" that the plaintiff assert "allegations that the defendants' acts were purposefully discriminatory. . . and racially

motivated." <u>Albert v. Carovano</u>, 851 F.2d 561, 571 (2d Cir. 1988). Little argues that even though she maintained a good work record throughout her career with Northeast Utilities and never fell below a satisfactory performance level, Northeast Utilities failed to promote her because of her race. She contends, "that she applied for [supervisor] positions several times and had not been selected," because of "prior difficulties with [her supervisor]." In addition, Little asserts that when she attempted to receive training she missed during her leave of absence, Northeast Utilities refused her requests. This action, Little asserts, demonstrated Northeast Utilities' willful intentions to deny her promotions as the training was necessary to achieve promotions. Because, at this stage, the plaintiff need only provide a minimal prima facie showing, Little's assertions that she was a qualified employee continuously denied promotions and training because of her race, suffices to demonstrate purposeful discrimination.

The plaintiff must also demonstrate that the discrimination alleged involved one of the § 1981's enumerated activities in order to meet the requirements of establishing a prima facie case. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 339 (2d Cir. 1999), <u>cert.</u> <u>denied</u>, 534 U.S. 816

(2001).  The United States Supreme Court has determined that under the statute's enumerated activities, § 1981 provides protection against racial discrimination in private employment.  <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454, 459-60 (1975).  Therefore, since this action involves an allegation that Northeast Utilities failed to promote Little because of her race, one of § 1981's enumerated activities is at issue, and Little meets this requirement.

Although Little adequately satisfies the minimal burden of establishing a prima facie case, the inquiry does not end here.  The burden shifts to Northeast Utilities to demonstrate some legitimate, nondiscriminatory reason for its actions.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  Northeast Utilities provided voluminous evidence demonstrating that Little was an average employee, and not fully qualified for the promotions that she claims Northeast Utilities denied her because of her race. Little's supervisors, David Brown and Thomas Murphy, both testified to Little's inability to absorb constructive criticism without becoming defensive.  Furthermore, Murphy's deposition and Little's annual performance reports reflect that Little possessed problems adhering to her work schedule, as well as meeting Northeast Utilities'

productivity goals.  In addition, during Little's own testimony, she explained that on a scale of 1 to 5, she considered a 4 or a 5 to be a good performance rating, and admitted that she mainly received performance ratings of 3.

Northeast Utilities also provided evidence supporting Little's overreaction to certain situations, such as the hairspray incident.  Northeast Utilities supervisors properly investigated the incident before concluding it was an accident.  In doing so, however, Northeast Utilities supervisor, Diane Brown, took care to instruct her employees to discontinue use of such sprays in the workplace.  This demonstrated that Northeast Utilities took the incident seriously.

Furthermore, Northeast Utilities provided evidence showing that it never denied Little proper training or left her "out of the loop" because of her race.  Diane Brown's testimony revealed that some days Little removed herself from her coworkers as she was "kind of moody," conduct Little acknowledged during a discussion with David Brown and Sandy Moreland.  In addition, David Brown testified that Northeast Utilities provided special training sessions for anyone who missed training.  Little admitted in her deposition that she was not sure whether Northeast Utilities offered any formal training during her leave of absence.

In light of the foregoing, the court concludes that
Northeast Utilities has met its burden to demonstrate some
legitimate, nondiscriminatory reason for its actions.  See
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).
As the defendant has met its "burden of production," Texas
Department of Community Affairs v. Burdine, 450 U.S. 248,
255 (1981), "the presumption of discrimination created by
the plaintiff's prima facie showing drops from the case."
Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d
1219, 1224-25 (2d Cir. 1994).  Because Northeast Utilities
established legitimate reasons for Little's treatment,
unrelated to race discrimination, it satisfies it burden
under the McDonnell Douglas analysis. McDonnell Douglas
Corp., 411 U.S. at 802.

The burden now shifts back to Little to demonstrate
that Northeast Utilities' reasons for its actions are a
pretext for discrimination.  Id. at 803.  Little can not
sustain this burden.  At this stage in the analysis, a
minimal showing of a prima facie case and some evidence of
potential pretext does not mandate a denial of summary
judgment. Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d
Cir. 2001).  The Second Circuit has noted that while a jury
maintains the responsibility of determining what inferences
can be drawn from circumstantial evidence of discrimination,

"a jury cannot infer discrimination from thin air." <u>Lizardo</u>
<u>v. Denny's, Inc.</u>, 270 F.3d 94, 103-04 (2d Cir. 2001).  On a
motion for summary judgment in a discrimination case, "the
plaintiff must provide the trial court with more than his
own conclusory allegations declaring discrimination was
present."  <u>Forsyth v. Federation Employment and Guidance</u>
<u>Service</u>, 409 F.3d 565, 573 (2d Cir. 2005).

In this case, the record lacks a sufficient showing of
circumstantial or direct evidence to support a reasonable
finding that Northeast Utilities' reasons for its actions
were a pretext for racial discrimination.  Little cites
incidents of mistreatment and calls upon the court to
conclude that such mistreatment was race-related without
providing proper evidence to support such a conclusion.  For
example, Little asserts that her supervisor, David Brown,
harassed her by criticizing her in front of her co-workers.
However, Little provides no evidence of such criticism, nor
any explanation of how the criticism would be race-related.
Furthermore, when Northeast Utilities first investigated
Little's grievances, Little stated outright that she did not
think she was being treated differently because of her race
during her interview with Attorney Fass.  Little, therefore,
can not overcome Northeast Utilities' showing of legitimate

reasons for its treatment towards her.[5]  As such, Northeast
Utilities is entitled to summary judgment with respect to
Little's disparate treatment cause of action.

II.  Constructive Discharge

Northeast Utilities next argues that the plaintiff
failed to adequately establish that it constructively
discharged Little in violation of § 1981.  Specifically, the
defendant argues that "neither the allegations of the Second
Amended Complaint nor the 'evidence' submitted to this Court
in opposition to this motion for summary judgment legally
suffice to sustain an inference that a reasonable person
would have been 'compelled' to resign from [Northeast
Utilities]."

Little responds by maintaining that the "record
supports submission of her constructive discharge claim to a
trier of fact."  Specifically, Little argues that she faced
"circumstances that were so intolerable [that] it
compel[led] her to resign" and she adequately "provided
evidence of harassment from which supports a reasonable
inference that [her] workplace was intolerable."

---

[5] Northeast Utilities also argues that Little's disparate
treatment cause of action fails because Little did not prove
that she was a member of a racial minority.  However,
because the court disposes of the disparate treatment cause
of action on other grounds, the court does not need to
resolve this issue.

In Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987), the Second Circuit explained that "a constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Therefore, in order to conclude that a constructive discharge occurred, the record must sufficiently prove that the working conditions were so intolerable that a reasonable person in the shoes of the employee would have also felt compelled to resign. Id. In addition, in order to prevail, a plaintiff must also demonstrate that the defendant intentionally made the workplace intolerable. Id.; see Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)(requiring something more than mere negligence or ineffectiveness on the part of the employer to warrant a constructive discharge).

Although Northeast Utilities refused to promote Little, she faced neither a loss in pay, nor a demotion in job title. Furthermore, Northeast Utilities never threatened or implied that Little would face dismissal from her position. Instead, Northeast Utilities demonstrated an interest in retaining Little as an employee as it granted Little a leave of absence from which she returned to her regular position.

Under these circumstances, Little cannot sustain a
constructive discharge claim, as she has failed to present
any evidence that her working conditions were so intolerable
that a reasonable person in her position would have also
felt compelled to resign.  See Pena v. Brattleboro Retreat,
702 F.2d 322, 325 (2d Cir. 1983)(holding that the plaintiff
was not constructively discharged since the record verified
the defendant's desire to keep plaintiff within its employ).

Additionally, Little has failed to produce evidence
demonstrating that Northeast Utilities intentionally created
an intolerable work environment.  In Whidbee v. Garzarelli
Food Specialties, Inc., 223 F.3d at 74, the Second Circuit
explained that even where the employer knew that a fellow
employee made racially offensive comments so as to create a
hostile work environment and did not stop such activity, the
plaintiff did not have a constructive discharge cause of
action because the plaintiff failed to show "deliberate
action on the part of the employer."  Id.; see also Overton
v. New York State Division of Military and Naval Affairs,
373 F.3d 83, 99-100 (2d Cir. 2004)(Poole, J.,
concurring)(affirming grant of summary judgment on a
constructive discharge cause of action even where supervisor
was known to say "smile, so that we can see you in the dark"
and "I'll kill that nigger").  The severity of the incidents

Little complains of do not begin to compare with the alleged discriminatory conduct of the superior in <u>Overton</u>.  <u>See</u> <u>Overton v. New York State Division of Military and Naval</u> <u>Affairs</u>, 373 F.3d at 99-100.  As summary judgment was warranted in that case, it is appropriate here as well.

III.  <u>Hostile Work Environment</u>

Northeast Utilities next argues that Little failed to establish adequate evidence to support a § 1981 hostile work environment cause of action.  Specifically, the defendant contends that Little's "vague assertions do not legally support a claim for 'hostile work environment' and the claim likewise fails."

Little responds that she properly established that because the workplace "was permeated with discriminatory intimidation", a hostile work environment existed. Specifically, Little contends that instances, such as the hairspray episode and the incident in which of Little's supervisor, Sandy Moreland, referred to a customer as a "black bitch", demonstrate the existence of a hostile work environment.

In <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993), the United States Supreme Court explained that a hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and

insult,. . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Further, the Second Circuit has held that such incidents of harassment must be repeated and continuous, rather than isolated or occasional, in order to merit relief under such a cause of action. Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2d Cir. 1992).

Additionally, "a hostile work environment claim has both an objective and subjective component."  Boyd v. Presbyterian Hospital in the City of New York, 160 F.Supp.2d 522, 539 (D. Conn. 2001) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)).  As such, first, a reasonable person would have to perceive the workplace environment as being hostile, and second, the plaintiff would have to subjectively believe that the environment is hostile.  Boyd, 160 F.Supp.2d at 539.

In this case, the record lacks sufficient evidence of racial harassment to create a triable question on Little's hostile work environment cause of action.  The record cites a small number of isolated instances of potential harassment.  With the exception of the single incident involving Little's supervisor referring to a customer as a "black bitch," the record lacks any evidence to support a

22

finding that racially derogatory remarks were commonplace.
See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67
(1986)(reasoning that a mere utterance of a racial epithet
would not sufficiently affect the work environment to
violate Title VII).  In addition, Little fails to prove that
the hairspray episode was anything but accidental, or prove
that coworkers regularly inflicted such mistreatment on her.
Further, her unsubstantiated claims of being left "out of
the loop" and not receiving proper training cannot fairly be
characterized as "discriminatory intimidation, ridicule, or
insult."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21
(1993).  While Little may have subjectively felt as though
her work environment was hostile, her subjective belief is
insufficient.  No reasonable jury could objectively find
that these incidents, taken individually or collectively,
were severe or pervasive enough to create a hostile work
environment.  As such, Northeast Utilities is entitled to
summary judgment with respect to Little's hostile
environment cause of action.

IV.  Retaliation

Northeast Utilities finally argues that Little failed
to adequately plead a cause of action for retaliation.
Specifically, Northeast Utilities argues that "while the
Plaintiff contends in her Opposition that she suffered

retaliatory treatment for engaging in protected activity . . . she makes no allegation in her Second Amended Complaint and, therefore, no retaliation claim is properly before this Court." Further, Northeast Utilities asserts that even if pled, Little's retaliation cause of action would be legally insufficient.

Little argues the record provides sufficient evidence "to support a finding of genuine issues of material fact to submit the retaliation claim under § 1981 to a trier of fact." Specifically, Little asserts that "there are genuine issues of material fact regarding whether her grievances [filed in May and August of 2000] constitute protected activity that is casually connect[ed] to the adverse actions of the denial of promotion and subsequent negative performance evaluation."

Although the complaint does not contain a count specifically addressing a retaliation cause of action, it does allege facts in support of such a cause of action. For example, the complaint states that Little "was being retaliated against for filing a complaint and opposing discrimination in the workplace" and that Northeast Utilities made it increasingly difficult for her to continue working there as she was left "out of the loop" and ostracized by her coworkers and supervisors. Further, the

complaint alleges that Northeast Utilities repeatedly denied Little promotions even though she demonstrated satisfactory work performance. Therefore, the court concluded that the retaliation cause of action is properly before the court. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d Cir. 2000) (holding that "although the complaint did not refer specifically to 'hostile work environment harassment,' it did describe the harassment . . . in enough detail to put the claim before the court").

Nevertheless, Northeast Utilities is still entitled to summary judgment. In Cruz v. Coach Stores, Inc., the Second Circuit explained that in order to establish a prima facie case for retaliation, a plaintiff must show "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse action." Id. at 566.

Little can show that she engaged in a protected activity. The Second Circuit has previously held that a "protected activity" under the discrimination statute applies to both formal and informal discrimination complaints. Id.; see also Ramos v. Marriott International, Inc., 134 F.Supp.2d 328, 347 (D. Conn. 2001). Therefore, Little's grievance filed with Northeast Utilities in May,

2000 and her grievance filed with the CHRO in August, 2000, each constitute a "protected activity" of which Northeast Utilities was aware.

Despite Little's ability to satisfy the first requirement for the retaliation analysis, her cause of action fails as she cannot demonstrate a causal connection between any adverse employment action and the filing of her grievances. A plaintiff can establish a causal connection "indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . or through evidence such as disparate treatment of fellow employees who engaged in similar conduct, or . . . directly through evidence of retaliatory animus directed against a plaintiff by the defendant." DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir. 1987).

Little testified that following the filing of her grievances "everything just changed" and anytime Northeast Utilities supervisors could call her into their offices to reprimand her they would. Although the court provides the plaintiff leeway to establish a causal connection, Little fails to show such connection with these assertions. Northeast Utilities has put forth substantial evidence supporting its assertion that it refused to grant Little promotions because of her status as an average employee,

which her performance reviews substantiate as she mainly
received a rating level of 3 on a scale of 1 to 5.  Further,
an examination of Little's performance record reveals that
her reviews suffered a steady decline starting from 1995,
long before she ever filed grievances against Northeast
Utilities, and lasting up until her employment with
Northeast Utilities ended in 2001.

In 1995, Little possessed an overall rating of "Q+,"
which decreased to an overall rating of "Q" in 1996.  In
1998, her performance rating report cites weakness in
communication and a tendency for Little to separate herself
from her coworkers during difficult situations.  In 1999 and
2000, Little's performance review reports demonstrate that
she only marginally met productivity requirements.  Finally,
in 2001, Little's performance review report cites a further
decline in her rating as she received an overall rating that
only "marginally met" Northeast Utilities' standards.  This
report also advised Little that she needed to improve her
schedule adherence, her communication with supervisors and
coworkers, her attitude, and her attendance.  Based on this
evidence, the court finds it inappropriate to draw a casual
connection between filing the grievances in May and August
of 2000 and Little's 2001 performance rating, her worst to
date.  Because Little's performance ratings began steadily

decreasing in 1995, five years prior to the filing of her grievances, it is inappropriate to give significant weight to the fact that Little's performance review ratings continued to decrease following the filing of her grievances in 2000.

To further support its assertion that Little did not receive promotions because she was only an average employee, Northeast Utilities indicates that more qualified employees received the promotions denied to Little.  Little not only failed to dispute Northeast Utilities' assertions, she has admitted that her performance ratings were only average. Further, she failed to provide evidence that Northeast Utilities treated her differently than similarly situated employees.  Little even points out in her deposition that she believed some of her white coworkers who did not engage in protected activities suffered similar mistreatment by Northeast Utilities.  The record, therefore, lacks any evidence to demonstrate that Little suffered retaliatory treatment, making summary judgment as to this cause of action appropriate.

## CONCLUSION

For the forgoing reasons, the motion for summary judgment (document no. 30) is GRANTED.

It is so ordered, this 8th day of March, 2007, at Hartford, Connecticut.

___/s/_____

Alfred V. Covello
United States District Judge